# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WILLIE DIXON, | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 17 C 7304 |
| v. | )<br>) Judge Jorge L. Alonso |
| DR. SALEH OBAISI, DR. FISHER, DR. FE FUENTES, REMONA L. LAWLESS, DR. ADRIEN FEINERMAN, DR. STEPHEN RITZ, DR. THOMAS M. LEHMAN, DR. ELAZEGUL, WEXFORD HEALTH SOURCES, INC., and DOES, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie Dixon ("Dixon") has filed a ten-count third-amended complaint, in which he alleges that defendants were deliberately indifferent to his medical needs while he was incarcerated at two prisons over the course of more than twenty years. Before the Court are six motions to dismiss plaintiff's claims.

### I. BACKGROUND

The following facts are from plaintiff's third amended complaint, and the Court takes them as true.

In the summer of 1993, while he was incarcerated at Stateville Correctional Center ("Stateville"), plaintiff injured his left shoulder while playing softball. Plaintiff suffered "incredible pain," and a medical technician gave him medication for pain. For the next decade at Stateville, plaintiff continued to experience pain from the injury. Twice (once on September 16, 1997 and once on October 31, 1997) plaintiff requested a magnetic resonance imaging ("MRI")

test of his shoulder injury. Plaintiff was, instead, given an x-ray examination. Plaintiff did not file a grievance with respect to his medical care at Stateville before 2003, because he did not think it would help. Nonetheless, his shoulder pain continued and began to affect his left arm and thumb.

In 2003, plaintiff was transferred to Menard Correctional Center ("Menard"). During his time at Menard, plaintiff continued to suffer from pain in his shoulder. He was given medication for pain. When he requested an MRI (twice in December 2008 and once in March 2009), he was denied. On August 5, 2008, plaintiff met with defendant Remona Lawless ("Lawless"), a nurse. Plaintiff asked Lawless for more medical treatment and for help with managing his pain. Lawless gave plaintiff a prescription for pain pills. On December 9, 2008, when plaintiff spoke to defendant Fe Fuentes ("Dr. Fuentes"), Dr. Fuentes told plaintiff that, because his "injury was an old injury it would come and go." Plaintiff told Dr. Fuentes that his pain never goes away, to which Dr. Fuentes responded that plaintiff should sleep on his right side rather than his left.

In 2011, plaintiff transferred back to Stateville, where he was treated by defendant Saleh Obaisi ("Dr. Obaisi"), among others. Plaintiff complained to Dr. Obaisi about constant pain in his shoulder, arm and thumb. Plaintiff requested (on October 21, 2012 and March 5, 2014) an MRI. Instead of an MRI, Dr. Obaisi ordered, on April 4, 2014, a steroid shot for plaintiff's shoulder. The steroid shot did not alleviate plaintiff's pain, and plaintiff requested additional options for pain management.

In 2015, plaintiff received approval for an MRI. Plaintiff does not say which health care provider ordered the MRI, but it was approved by defendant Stephen Ritz ("Dr. Ritz"), who was employed by defendant Wexford Health Sources, Inc. ("Wexford") as its Corporate Medical Director of Utilization. Wexford contracts with Illinois Department of Corrections to provide

medical care to prisoners. Dr. Ritz was responsible for, among other things, approving or denying requests for particular treatment and diagnostic tests, including MRIs.

Plaintiff's MRI test was performed at an outside medical facility on October 19, 2015. Dr. Obaisi received the results on October 28, 2015. Once he saw the results of the MRI, Dr. Obaisi diagnosed plaintiff with damage to his cervical vertebral column. Dr. Obaisi ordered an appointment with an outside specialist, and Dr. Ritz approved the order. Dr. Obaisi did not send the MRI results to the outside specialist.

Plaintiff met with outside specialists at least twice. At the first visit (the date of which is not clear from the complaint), a physician told plaintiff his arm pain might have been caused by his original shoulder injury. At the second visit, on March 11, 2016, the physician told plaintiff he could do nothing without the MRI results.

Plaintiff was scheduled for surgery on November 4, 2016. Plaintiff took the results of his MRI with him to the surgery. During the surgery, doctors fused plaintiff's spine. After the surgery, plaintiff requested a follow-up appointment with an outside doctor. Dr. Ritz denied the request on December 12, 2016. Plaintiff had follow-up appointments on May 12, 2017 and April 27, 2018. At the April 27, 2018 visit with the specialist, plaintiff was prescribed physical therapy. Back at Stateville, defendant Dr. Elazegul failed to put in a request for physical therapy.[1]

Based on these allegations, plaintiff brings ten counts: one count each against nine named defendants and a tenth count against unnamed Doe defendants.

---

[1] This defendant's name is spelled differently by different parties. Defendant spells it Alazegui, and the Court has seen it spelled Elazegui by other courts. The Court will stick, for now, with Elazegul, which is how it is spelled in plaintiff's third amended complaint.

3

## II. STANDARD ON A MOTION TO DISMISS

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## III. DISCUSSION

### A. Statute of limitations

A number of defendants move to dismiss plaintiff's claims as barred by the statute of limitations. Failure to comply with a statute of limitations is an affirmative defense. *See Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014); Fed.R.Civ.P. 8(c)(1). A plaintiff need not plead around an affirmative defense, and the Court may dismiss on the basis of an affirmative defense only where a plaintiff alleges, and thus admits, the elements of the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-

14 (7th Cir. 2014); *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003).

The events plaintiff alleges in his complaint commenced in 1993, and plaintiff filed this suit on October 10, 2017.  Plaintiff seeks relief under § 1983 for alleged deliberate indifference, and such claims are governed by Illinois's two–year statute of limitations for injuries.  *Wilson v. Wexford Health Sources, Inc.*, __ F.3d __, __, Case No. 18-2499, 2019 WL 3369100 at *1 (7th Cir. July 26, 2019).  Accrual rules are governed by federal law.  *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013).

In this case, the parties disagree as to when plaintiff's claims accrued.  Plaintiff relies on *Devbrow* and argues that his claims accrued on October 28, 2015, the day Dr. Obaisi diagnosed him with damage to his cervical vertebral column.  In *Devbrow*, the plaintiff alleged that "defendants were deliberately indifferent to his medical needs by unnecessarily delaying a biopsy and thus preventing the diagnosis of his prostate cancer until it had already spread to the bone."  *Devbrow*, 705 F.3d at 769.  In that case, the Seventh Circuit described plaintiff's claim as seeking "redress for a concrete physical injury," namely that his cancer was not diagnosed "until after it had metastasized."  *Devbrow*, 705 F.3d at 769.  The Seventh Circuit held that a "§1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause."

Plaintiff argues that his case is like *Devbrow*, but his allegations suggest otherwise.  The Court does not read plaintiff's complaint to be alleging that plaintiff's shoulder injury was caused by delayed treatment.  Rather, plaintiff alleges that he injured his shoulder playing softball in 1993.  (3rd Am. Complt. ¶ 17).  He is not blaming defendants for that injury.  Instead, he alleges his "severe shoulder injury and serious and debilitating pain it caused, was a serious

5

medical condition and presented a serious medical need." (3rd Am. Complt. ¶ 34). Plaintiff further alleges he suffered "an ongoing denial of appropriate medical care due to the deliberate indifference of" Dr. Obaisi, Dr. Fisher, Dr. Fuentes, Lawless, Dr. Feinerman and Dr. Elazegul. (3rd Am. Complt. ¶¶ 36, 44, 52, 59, 65, 93). Plaintiff seeks relief for defendants' alleged ongoing failure to provide care for the serious shoulder injury plaintiff suffered in 1993.

As several defendants point out, after plaintiff left the prison at which they worked, they were no longer able to provide care to plaintiff. As the Seventh Circuit has explained:

> [A] section 1983 Eighth Amendment claim based on deliberate indifference in the delivery of medical care does not necessarily allege a single event or a series of events, but may describe an ongoing denial of care. In such cases, we have a continuing violation for accrual purposes. The alleged wrong—the refusal to provide medical care—'continued for as long as the defendants had the power to do something about [the plaintiff's] condition.'

*Wilson*, __ F.3d at __, 2019 WL 3369100 at *1 (internal citations omitted) (citing *Heard v. Sheahan*, 253 F.3d 316 (2001)). When a plaintiff leaves an institution where he was incarcerated, medical providers at that institution no longer have the power to do something about an ongoing denial of medical care; and, a claim accrues against those providers when the incarcerated person leaves that facility. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). In *Heard*, the Seventh Circuit explained:

> [T]he suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition. This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail.

*Heard*, 253 F.3d at 318.

In this case, plaintiff alleges he was transferred out of Stateville in 2003. (3rd Am. Complt. ¶ 15). He alleges that three medical providers—Dr. Obaisi, Dr. Fisher and Dr.

6

Elazegul—were deliberately indifferent to his medical needs at Stateville.[2] Plaintiff's claim for deliberate indifference with respect to any care provided by those providers before plaintiff transferred from Stateville in 2003 accrued at the time plaintiff left Stateville. Although the exact date of the transfer is not clear from the record, it is clear that it was more than two years before plaintiff filed this suit. Accordingly, plaintiff has alleged, and thus admitted, that his claims that Drs. Obaisi, Fisher and Elazegul were deliberately indifferent to his medical needs between 1993 and 2003 are time-barred. Such claims are dismissed with prejudice.[3]

Plaintiff alleges that when he left Stateville in 2003, he was sent to Menard, where he stayed until he was transferred back to Stateville in 2011. (3rd Am. Complt. ¶ 15). Plaintiff alleges that while he was incarcerated at Menard, he was treated by Dr. Fuentes, Dr. Feinerman and Lawless, each of whom was deliberately indifferent to his medical needs. The problem with these claims, again, is that once plaintiff was transferred back to Stateville in 2011, these defendants lost their ability to do something about plaintiff's care. Accordingly, plaintiff's claims against these defendants accrued when plaintiff was transferred back to Stateville in 2011. Although it is not clear on what date plaintiff transferred, it is clear it was more than two years before plaintiff filed suit. Thus, plaintiff has alleged, and thus admitted, that these claims, too, are barred by the statute of limitations. Counts III, IV and V are dismissed with prejudice.

---

[2] Plaintiff's claim against Dr. Obaisi is actually against Dr. Obaisi's estate.

[3] It is clear from plaintiff's complaint that he alleges Dr. Obaisi and Dr. Elazegul were deliberately indifferent during the time period after plaintiff returned to Stateville in 2011. It is not clear from plaintiff's complaint whether the allegations of deliberate indifference against Dr. Fisher occurred during plaintiff's first stay at Stateville or during his second stay. Thus, the Court will not dismiss these counts in their entirety at this time. They are dismissed only as to conduct that occurred before plaintiff's transfer to Menard in 2003.

Finally, several defendants seek to dismiss as time-barred plaintiff's claims regarding conduct that occurred before March 12, 2014. Defendants' theory is that plaintiff filed his first grievance on May 11, 2014 and that prisoners must file their grievances within 60 days. The Court does not agree. While it is true that plaintiff alleges that he filed a grievance on May 11, 2014 (3rd Am. Complt. ¶ 30), plaintiff does not allege that this was his *first* grievance. Accordingly, plaintiff has not alleged, and thus admitted, the ingredients of a statute-of-limitations affirmative defense as to all events that occurred before March 12, 2014. That aspect of defendants' motions to dismiss is denied.

### B. Failure to state a claim

Several defendants argue that plaintiff fails to state a claim against them.

#### 1. Dr. Lehman

Dr. Lehman argues that the claim against him should be dismissed, because plaintiff has not alleged that he was involved with any alleged violation of plaintiff's constitutional rights. "For a defendant to be liable under section 1983, [he] must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018). In *Mitchell*, the Seventh Circuit explained that the "personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Mitchell*, 895 F.3d at 498.

Plaintiff alleges that Dr. Lehman was Wexford's Corporate Medical Director, which meant he was "responsible for ensuring that all IDOC inmates were provided with prompt and adequate medical care." (3rd Am. Complt. ¶ 81). Plaintiff alleges, "Dr. Lehman *knew or should have known* that certain inmates, such as Dixon, required outside medical treatment, such as a[n] MRI, but were not receiving it." (3rd Am. Complt. ¶ 84) (emphasis added). This is a conclusion

at best. Absent from plaintiff's complaint are any factual allegations supporting that conclusion, such as how Dr. Lehman knew that plaintiff needed an MRI, or any allegations that Dr. Lehman was otherwise involved with plaintiff's treatment. Plaintiff argues that Dr. Lehman can be liable if he condoned or acquiesced in a subordinate's deliberately indifferent treatment of plaintiff. That is correct, *see Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010), but plaintiff has not alleged that Dr. Lehman was aware that Dr. Obaisi or any other subordinate was providing inadequate care and that Dr. Lehman turned a blind eye.

Count VII is dismissed without prejudice and with leave to amend within 28 days.

### 2. Dr. Ritz

Next, Dr. Ritz argues that plaintiff fails to state a claim against him. As to Dr. Ritz, plaintiff plainly alleges that Dr. Ritz was involved with plaintiff's care.

First, plaintiff alleges that roughly five weeks after plaintiff's surgery, Dr. Ritz denied plaintiff's request for a follow-up appointment with an outside specialist. (3rd Am. Complt. ¶ 28). Plaintiff does not, however, allege that this denial violated the standard of care. If, for example, the standard of care was for a follow-up visit to occur at a different interval from the five weeks that plaintiff requested, that would not constitute deliberate indifference. *See Berry v. Lutsey*, __ Fed.Appx. __, Case No. 18-2614, 2019 WL 2881000 at *2 (7th Cir. July 3, 2019) ("[T]he gap in doctors' visits was rooted in medical judgment. [Defendant] determined . . . that a follow-up in six months was proper. An exercise of medical judgment like this negates a claim of deliberate indifference."). As it is currently alleged, Dr. Ritz's denial is as consistent with lawful conduct as with unlawful conduct and, thus, does not state a plausible claim. *Twombly*, 550 U.S. at 570 (allegations that are as consistent with lawful conduct as they are with unlawful

conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible").

Plaintiff also alleges that the approval of Dr. Ritz was necessary in order for a prisoner to be granted an MRI and that Dr. Ritz "finally" approved an MRI in 2015. (3rd Am. Complt. ¶¶ 22, 23). The reason these allegations do not state a plausible claim for deliberate indifference is that plaintiff has alleged neither that a medical provider asked Dr. Ritz to approve an MRI sooner nor that Dr. Ritz was otherwise aware sooner that plaintiff needed an MRI. All that is currently alleged is that Dr. Ritz approved an MRI, which does not, by itself, constitute deliberate indifference.

Plaintiff has not stated a claim for deliberate indifference against Dr. Ritz. Accordingly, Count VI is dismissed without prejudice and with leave to amend within 28 days.

    **3.**    **Dr. Fisher**

Next, Dr. Fisher argues that plaintiff fails to state a claim against him for deliberate indifference to plaintiff's medical needs. The Court disagrees. Plaintiff has alleged that Dr. Fisher treated him at Stateville. Plaintiff has alleged he suffered "a severe shoulder injury and serious and debilitating pain." (3rd Am. Complt. ¶ 41). Plaintiff further alleges he "complained to Dr. Fisher repeatedly about his injury and unbearable pain, but he was never provided any effective medical assistance or treatment." (3rd Am. Complt. ¶ 43). Finally, plaintiff alleges he "pleaded with Dr. Fisher to schedule an MRI because the pain in his shoulder was not improving." (3rd Am. Complt. ¶ 42). Accordingly, plaintiff has stated a plausible claim for

deliberate indifference against Dr. Fisher. Defendant's motion to dismiss for failure to state a claim is denied as to Count II.[4]

### 4. Wexford Health Sources

In Count IX, plaintiff alleges that defendant Wexford was deliberately indifferent to his medical needs. Wexford moves to dismiss.

The Seventh Circuit held long ago that "just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (internal citations omitted). Since *Iskander* was decided in 1982, the Seventh Circuit "ha[s] chosen to leave *Iskander* undisturbed." *Wilson*, __ F.3d at __, 2019 WL 3369100 at *5. Still, a plaintiff can attempt to hold a private corporation liable by bringing "a *Monell*-style claim against a private corporation acting under color of state law." *Gabb v. Wexford Health Sources, Inc.*, __ F.3d __, __, Case No. 18-2351, 2019 WL 2498640 at *5 (7th Cir. June 17, 2019). To prevail under *Monell*, a plaintiff must show that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," caused the constitutional deprivation. *Monell v. Department of Social Services of City of NY*, 436 U.S. 658, 694 (1978).

---

[4] Dr. Fisher also seems to be arguing that this claim is time-barred, because all of the events occurred before 2003. Plaintiff has not alleged, and thus admitted, that all of the events involving Dr. Fisher occurred before 2003. Accordingly, plaintiff has not pleaded himself out of court as to the entirety of Count II. If evidence at a subsequent stage of litigation establishes that all of plaintiff's claim against Dr. Fisher is time barred, defendant may seek appropriate relief at that time.

11

Here, the only policy plaintiff alleges is Wexford's policy "whereby it was responsible for managing the day-to-day operations provided to IDOC and was responsible for ensuring that all IDOC inmates were provided with prompt and adequate medical care." (3rd Am. Complt. ¶ 97). That is not a policy that could be thought of as causing a deprivation of plaintiff's rights.

Plaintiff goes on to allege that Wexford "knew or should have known that certain inmates, such as Dixon, required outside medical treatment, such as a[n] MRI, but were not receiving it" and should have "implement[ed] and enforce[d] appropriate policies or procedures to avoid" constitutional deprivations. (3rd Am. Complt. ¶¶ 100, 103). The Court assumes that plaintiff is attempting to allege that plaintiff's constitutional deprivation was caused by Wexford's custom or practice of denying needed care. In *Gill v. City of Milwaukee*, the Seventh Circuit described what must be alleged in order to state a *Monell* claim based on a custom or practice:

> To succeed on this *de facto* custom theory, the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents. At the pleading stage, then, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread . . . as to constitute a governmental custom.
>
> [Plaintiff's] complaint fails to do so. It does not provide examples of other Milwaukee police officers taking actions similar to those complained of here. More importantly, it does not plausibly allege that such examples exist.

*Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). As in *Gill*, plaintiff in this case fails to allege examples of other prisoners who were denied necessary outside care. Nor does plaintiff plausibly allege that other examples exist.

Accordingly, Count IX is dismissed without prejudice and with leave to amend within 28 days.

## IV. CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part defendants' motion [80] to dismiss. Defendant Obaisi's motion to dismiss [51] is granted in part and denied in part. Defendant Fuentes's motion to dismiss [57] is granted. Defendant Lawless's motion to dismiss [46] is granted. Defendant Lehman's motion to dismiss [53] is granted. Defendant Wexford's motion to dismiss [55] is granted.

Counts I, II and VIII are dismissed with prejudice to the extent they allege conduct occurring before plaintiff's transfer out of Stateville in 2003. The remainder of Counts I, II and VIII remain pending. Counts III, IV and V are dismissed with prejudice. Counts VI, VII and IX are dismissed without prejudice and with leave to amend within 28 days.

**SO ORDERED.**　　　　　　　　　　　　　　　　**ENTERED: August 1, 2019**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**HON. JORGE ALONSO**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**