UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WILLIE DIXON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| | ) | No. 17 C 7304 |
| v. | ) ) | Judge Jorge L. Alonso |
| DR. SALEH OBAISI, DR. FISHER, DR. THOMAS M. LEHMAN, DR. ELAZEGUL, and WEXFORD HEALTH SOURCES, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

After the Court dismissed portions of his third-amended complaint, plaintiff Willie Dixon ("Dixon") filed a five-count fourth-amended complaint, in which he alleges that defendants were deliberately indifferent to his medical needs while he was incarcerated at Stateville Correctional Center ("Stateville"). Before the Court is a motion to dismiss filed by three of the five defendants. For the reasons set forth below, the motion is granted.

## I. BACKGROUND

The following facts are from plaintiff's fourth-amended complaint, and the Court takes them as true.

In the summer of 1993, while he was incarcerated at Stateville, plaintiff injured his left shoulder while playing softball. Plaintiff suffered "incredible pain," and a medical technician gave him medication for that pain. For the next decade at Stateville, plaintiff continued to experience pain from the injury. Twice plaintiff requested a magnetic resonance imaging ("MRI") test of his shoulder injury. Plaintiff was, instead, given an x-ray examination. Plaintiff did not file a grievance with respect to his medical care at Stateville before 2003, because he did

not think it would help. Nonetheless, his shoulder pain continued and began to affect his left arm and thumb.

In 2003, plaintiff was transferred to Menard Correctional Center ("Menard").[1] During his time at Menard, plaintiff continued to suffer from pain in his shoulder. He was given medication for pain. When plaintiff sought treatment for pain, he was told that because his injury was an old injury, the pain would come and go. Plaintiff told the provider his pain never goes away, to which the provider responded that plaintiff should sleep on his right side rather than his left.

In 2011, plaintiff transferred back to Stateville,[2] where he was treated by defendant Saleh Obaisi ("Dr. Obaisi"), among others. Plaintiff complained to Dr. Obaisi about constant pain in his shoulder, arm and thumb. Plaintiff requested (on October 21, 2012 and March 5, 2014) an MRI. Instead of an MRI, Dr. Obaisi ordered, on April 4, 2014, a steroid shot for plaintiff's shoulder. The steroid shot did not alleviate plaintiff's pain, and plaintiff requested additional options for pain management. On April 15, 2014, Dixon asked for an appointment with the on-site Medical Director. An appointment was scheduled for May 8, 2014, but the appointment never happened.

On June 5, 2014, Dixon met with Dr. Obaisi. Dr. Obaisi suspected that Dixon had degenerative disc disease and put in a request for an orthopedic evaluation. The request was sent

---

[1] The Court previously dismissed as time-barred plaintiff's claims arising from conduct before he left Stateville in 2003. Plaintiff has included those allegations in his fourth-amended complaint, so they are included here.

[2] The Court previously dismissed as time-barred plaintiff's claims arising from conduct before he left Menard in 2011. Plaintiff has included those allegations in his fourth-amended complaint, so they are included here.

to Wexford, and Dr. Neil Fisher ("Dr. Fisher") approved it. The orthopedic evaluation occurred on February 27, 2015. In the meantime, someone at some point (the details are not in the complaint) referred plaintiff for physical therapy, which did not help. The orthopedic evaluation confirmed narrowing and degenerative disc disease. Someone (again, the complaint does not say who) requested an MRI for plaintiff. On March 15, 2015, plaintiff learned he was approved for an MRI.[3] Plaintiff continued to complain about pain while waiting for his MRI.

Plaintiff's MRI test was performed at an outside medical facility on October 19, 2015. Once Dr. Obaisi saw the results of the MRI, Dr. Obaisi diagnosed plaintiff with damage to his cervical vertebral column. Dr. Obaisi ordered an appointment with an outside specialist, and Dr. Ritz approved the order. Dr. Obaisi did not send the MRI results to the outside specialist.

Plaintiff met with outside specialists at least twice. At the first visit (the date of which is not clear from the complaint), a physician told plaintiff his arm pain might have been caused by his original shoulder injury. At the second visit, on March 11, 2016, the physician told plaintiff he could do nothing without the MRI results.

Plaintiff was scheduled for surgery on November 4, 2016. Plaintiff took the results of his MRI with him to the surgery. During the surgery, doctors fused plaintiff's spine. After the surgery, plaintiff requested a follow-up appointment with an outside doctor. Dr. Stephen Ritz ("Dr. Ritz") denied the request on December 12, 2016. Plaintiff had follow-up appointments on May 12, 2017 and April 27, 2018. At the April 27, 2018 visit with the specialist, plaintiff was

---

[3] In his fourth-amended complaint, plaintiff does not say who approved the MRI request. In his third-amended complaint, plaintiff said it was Dr. Stephen Ritz, who is no longer a defendant in this case. Plaintiff did not list Dr. Stephen Ritz as a defendant in his fourth-amended complaint, and the Court previously granted this motion as to Dr. Ritz. [Docket 105].

prescribed physical therapy. Back at Stateville, defendant Dr. Elazegul failed to put in a request for physical therapy.[4]

Based on these allegations, plaintiff brings five counts: one count each for deliberate indifference against Dr. Obaisi (Count I), Dr. Fisher (Count II), Dr. Thomas Lehman ("Dr. Lehman") (Count III), Dr. Elazegul (Count IV) and Wexford Health Sources, Inc. (Count V).

## II. STANDARD ON A MOTION TO DISMISS

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the plaintiff. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

---

[4] This defendant's name is spelled differently by different parties. Defendant spells it Alazegui, and the Court has seen it spelled Elazegui by other courts. The Court will stick, for now, with Elazegul, which is how it is spelled in plaintiff's fourth-amended complaint.

4

Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680-81 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## III. DISCUSSION

In this case, plaintiff seeks relief under § 1983 for alleged violations of his Eighth-Amendment right to be free from cruel and unusual punishments. Three defendants, Dr. Fisher, Dr. Lehman and Dr. Ritz move to dismiss the claims against them. The Court previously granted the motion as to Dr. Ritz [docket 105] and now considers the motion as to Drs. Fisher and Lehman. They argue that plaintiff fails to state a claim against them.

As the Supreme Court has said:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The reason is that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

"For a defendant to be liable under section 1983, [he] must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights." *Mitchell v. Kallas*, 895 F.3d 492,

498 (7th Cir. 2018). In *Mitchell*, the Seventh Circuit explained that the "personal-involvement requirement is satisfied if the constitutional violation occurs at a defendant's direction or with her knowledge or consent." *Mitchell*, 895 F.3d at 498. Thus, a supervisor is liable only if a plaintiff shows "the supervisor was personally involved in the constitutional violation." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *see also Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010) ("Although [plaintiff's] evidence may cast doubt on [defendant's] performance as a medical director, it does not support an inference that [defendant] condoned any unconstitutional practice[.] . . . Without knowledge of the allegedly unconstitutional care that [the other defendant] provided, [defendant] cannot be liable by mere virtue of his supervisory status."). As the Seventh Circuit explained in *Gill*, where a plaintiff alleges "only that [defendant] failed to train" employees adequately and was deliberately indifferent to their actions, the plaintiff has not stated a claim. *Gill*, 850 F.3d at 344 ("There is, however, no allegation or plausible inference that [defendant] knew about or was personally involved in the specific conduct. Therefore, we agree with the district court that [plaintiff] cannot maintain a claim for supervisory liability.")

### A. Dr. Fisher

The Court previously denied a motion to dismiss plaintiff's claim against Dr. Fisher for failure to state a claim. That was because plaintiff had alleged, in his third-amended complaint, that he had "complained to Dr. Fisher repeatedly about his injury and unbearable pain, but he was never provided any effective medical assistance or treatment." (3rd Am. Complt. ¶ 43). Plaintiff had also alleged that he "pleaded with Dr. Fisher to schedule an MRI because the pain in his shoulder was not improving." (3rd Am. Complt. ¶ 42).

6

In his fourth-amended complaint, plaintiff has deleted those allegations against Dr. Fisher, presumably because the alleged incidents occurred outside the statute of limitations. (See footnotes 1 and 2). In the fourth-amended complaint, the only non-conclusory allegation as to Dr. Fisher is that he approved Dr. Obaisi's request for an orthopedic evaluation for Dixon. (4th Am. Complt. ¶ 40). That allegation does not make a claim for deliberate indifference plausible. The only other allegations as to Dr. Fisher's conduct are conclusory, as in "Fisher knew that Dixon needed medical treatment" without any factual support as to how Dr. Fisher knew. (4th Am. Complt. ¶ 69). That does not suffice. *Iqbal*, 556 U.S. at 680-81 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement").

For these reasons, the Court agrees that plaintiff has not stated a plausible claim of deliberate indifference against Dr. Fisher. Defendants' motion to dismiss is granted as to Count II. Although plaintiff has filed five complaints, the original was filed *pro se*, and the second-amended complaint merely substituted one defendant for another. Nonetheless, plaintiff has had three solid attempts to file a complaint with the assistance of counsel, and that is enough. Count II is dismissed with prejudice.

**B.     Dr. Lehman**

The Court previously dismissed plaintiff's claim against Dr. Lehman for failure to state a claim. Once again, Dr. Lehman argues that the claim against him should be dismissed, because plaintiff has not alleged that he was involved with any alleged violation of plaintiff's constitutional rights. Plaintiff continues to cite *Minix* and argues Dr. Lehman failed to

implement policies to prevent constitutional violations. That case, however, does not help plaintiff. In *Minix*, the Seventh Circuit said:

> Although [plaintiff's] evidence may cast doubt on [defendant's] performance as a medical director, it does not support an inference that [defendant] condoned any unconstitutional practice[.] . . . Without knowledge of the allegedly unconstitutional care that [the other defendant] provided, [defendant] cannot be liable by mere virtue of his supervisory status.

*Minix*, 597 F.3d at 834. It is not enough that plaintiff wishes Dr. Lehman had put in place a policy to prevent constitutional violations. The constitutional violation plaintiff claims he suffered is cruel and unusual *punishment*. That is why the Supreme Court has said, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Rather, to state a claim, a plaintiff must allege facts from which it is plausible to infer that defendant "knew about or was personally involved in the specific conduct." *Gill*, 850 F.3d at 344. Here, plaintiff has included no factual allegations that suggest Dr. Lehman knew about or condoned the alleged constitutional violations. Conclusory allegations that Dr. Lehman "knew" (4th Am. Complt. ¶ 73) do not suffice. *Iqbal*, 556 U.S. at 680-81 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement").

Count III is dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the Court grants defendants' motion [102] to dismiss. The Court previously granted the motion as to Dr. Ritz [docket 105], against whom the plaintiff made no claim. The Court now grants the motion as to Drs. Fisher and Lehman. Counts II and III are dismissed with prejudice. Because no claims remain against Drs. Fisher and Lehman, they are no longer defendants in this case.

SO ORDERED. ENTERED:  April 1, 2020

_____
HON. JORGE ALONSO
United States District Judge